IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| JOHN M. CERNIGLIA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: |
| | ) |
| DAVID J. GIANNONE, INC d/b/a | ) |
| COMPLETE MARINE, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| Serve: David J. Giannone, Inc. d/b/a | ) |
|    Complete Marine | ) |
|    800 South Federal Highway | ) |
|    Pompano Beach, FL 33062 | ) |
| | ) |
| NAUTICSTAR, LLC, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| Serve: CSC-LAWYERS INCORPORATING | ) |
|    SERVICE COMPANY | ) |
|    221 Bolivar Street | ) |
|    Jefferson City, MO 65101 | ) |

## COMPLAINT

1. This lawsuit involves the sale of a 2022 NauticStar 28XS Boat (VIN JNT35683D222) and related equipment (together "the Boat") to Plaintiff John M. Cerniglia.

2. Although Mr. Cerniglia upheld his end of the bargain by paying for the Boat, Defendant David J. Giannone, Inc. d/b/a Complete Marine, (hereinafter "Complete Marine") and the warrantor, NauticStar LLC, a Missouri LLC, (hereinafter "NauticStar") failed to uphold their end of the bargain.

3. While Mr. Cerniglia paid the sales price of the Boat in November of 2022 the Boat remains undelivered and, to the best of Mr. Cerniglia's knowledge, unseaworthy, unsafe, and unfit for use under normal operating conditions.

1

**BACKGROUND**

4. On or about October 29, 2022, Mr. Cerniglia, a resident and citizen of the state of Louisiana, traveled to Fort Lauderdale, Florida to attend the Fort Lauderdale International Boat Show (the "Boat Show").

5. Mr. Cerniglia, an avid sport fisherman, attended the Boat Show with an interest in purchasing a NauticStar-branded boat for his personal, non-commercial use.

6. Upon information and belief, NauticStar-branded boats are manufactured in Mississippi.

7. Upon information and belief, the Boat was manufactured by NSB Boats, LLC, formerly known as Nautic Star, LLC, a Mississippi LLC.

8. Approximately one month prior to the Boat Show, NSB Boats LLC transferred its assets and liabilities to NauticStar LLC, a Missouri LLC.

9. While at the Boat Show, Complete Marine, a Pompano Beach, Florida-based watercraft dealer, attended the Boat Show and displayed the Boat.

10. Complete Marine is and at all times relevant, was an authorized NauticStar dealer.

11. A true and accurate copy of information that Complete Marine displayed regarding the Boat at the Boat Show follows:



12. At the Boat show, Complete Marine represented that the MSRP of the Boat was in excess of $260,000.

13. A true and accurate image of information Complete Marine displayed with the Boat follows:



14. While at the Boat Show, Complete Marine represented to Mr. Cerniglia that the Boat was of excellent quality and condition.

15. It is industry custom and standard to only display boats at boat shows in the manner that the Boat was displayed if said boat is of at least reasonable quality and available to be tendered to a purchaser.

16. After Mr. Cerniglia discussed purchasing the Boat with a Complete Marine representative at the Boat Show, Complete Marine offered additional discounts to Mr. Cerniglia, resulting in a final purchase price, inclusive of sales tax, of $180,116.10.

17. While at the Boat Show Mr. Cerniglia purchased the Boat from Complete Marine and executed a Purchase Agreement.

18. A true and accurate copy of the "Purchase Agreement" is attached to this Complaint and marked as Exhibit A.

19. Complete Marine also provided Mr. Cerniglia with a Buyer's Order, on or about November 7, 2022.

20. The Buyers Order reflected unnecessary and previously undisclosed fees resulting in a new total sales price of $182,029.36.

21. A true and accurate copy of the Buyer's Order is attached to this Complaint and marked as Exhibit B.

22. The Boat was sold with a warranty from NauticStar, LLC.

23. A true and accurate copy of the Warranty Certificate and Statement of Warranty as Complete Marine provided to Mr. Cerniglia is attached as Exhibit C (the "Warranty").

24. In part, that Warranty provides:

> Subject to the conditions and limitations to coverage and liability set for the below, NauticStar warrants to the original owner of a new NauticStar boat that either NauticStar or its authorized dealer, will, at NauticStar's option, repair or replace the fiberglass hull manufactured by NauticStar if it is found to be

5

structurally defective in material or workmanship for as long as the original purchaser owns the boat.

25. The Warranty also stated, "for purposes of this limited structural hull warranty, the term 'structurally defective' means the presence of a defect that cause the hull to be unsafe or unfit for use under normal operating conditions."

26. The Warranty also provides:

THE FOLLOWING FACTORY INSTALLED ITEMS ARE COVERED FOR A WARRANTY OF ONE (1) YEAR.

    a) Instrumentation;

    b) Boat wiring harness and switches;

    c) Fuel Tanks;

    d) Deck hardware;

    e) All boat lights, aerators, bilge pumps, hoses, clamps and fittings;

    f) Steering, temperature gauges and depth finders.

27. On or about November 2, 2022, Mr. Cerniglia transferred via wire $47,000 to Complete Marine pursuant to the Purchase Agreement.

28. On or about November 7, 2022, the remaining $135,029.36 was paid to Complete Marine by Mr. Cerniglia's lender.

29. Mr. Cerniglia's lender charged Mr. Cerniglia 7.74% APR for the financed portion of the purchase.

30. As part of the financing agreement, Mr. Cerniglia agreed to furnish his own insurance policy protecting the Boat at his own cost.

31. Mr. Cerniglia has made and continues to make regular and timely payments on the financed portion of the sale price and required insurance.

32. Between November 7, 2022 and November 16, 2022 Complete Marine contacted Mr. Cerniglia attempted to have him accept a different boat rather than the Boat that he had purchased.

33. Compete Marine informed Mr. Cerniglia that the Boat would be available for Mr. Cerniglia to receive from its facility in Pompano Beach, Florida on or about November 16, 2022.

34. Relying on Complete Marine's representation regarding the availability of the Boat, and at his own expense, Mr. Cerniglia traveled from his home in Louisiana to Complete Marine's facility in Pompano Beach, Florida on or about November 16, 2022.

35. Shortly before he arrived at Complete Marine's facility, Mr. Cerniglia received a call on his cell phone from Complete Marine in which Complete Marine indicated the Boat was not available for him to receive due to a problem with the transducer.

36. A transducer is a type of depth finder used to ensure sufficient clearance between the bottom of the hull and subsurface obstructions. Used in this capacity, it is an import piece of safety equipment. A transducer can also be used to locate fish or other sub-surface features.

37. When Complete Marine stated that there was a problem with the transducer Mr. Cerniglia at that time was only minutes away from Complete Marine's facility. He responded that he had traveled hundreds of miles from Louisiana to take possession of the Boat and he would prefer simply taking possession of the Boat and then having the transducer repaired at a local facility in Louisiana.

38. Mr. Cerniglia then arrived at the Complete Marine's facility in Pompano Beach, Florida.

39. When he arrived at Complete Marine's facility he saw that the Boat's hull had taken on water and was not sound. Mr. Cerniglia boarded the Boat and observed water and dirt beneath the Boat's floorboards.

40. Only then did Complete Marine advise Mr. Cerniglia that the Boat did not pass sea trials, had numerous defects, and required various repairs.

41. The defects were not disclosed to Mr. Cerniglia prior to November 16, 2022.

42. Had the defects been disclosed, Mr. Cerniglia would have either purchased a different boat or would not have been willing to pay the price agreed to for the Boat.

43. Complete Marine did not allow Mr. Cerniglia to take possession of the Boat on November 16, 2022.

44. After the defects were disclosed, Complete Marine represented that it would repair the Boat and that the work was covered under the Warranty.

45. On or about November 16, 2022 Complete Marine also provided additional information from the manufacturer, showing an MSRP of $242,252 – roughly $20,000 less than the MSPR shown to him at the Boat Show.

46. The following information, which is also attached as Exhibit D, was provided to Mr. Cerniglia:



47.	After November 16, 2022, Mr. Cerniglia repeatedly requested possession of the Boat and regularly followed up on its status, both with Complete Marine and with NauticStar.

48.	After November 16, 2022 Complete Marine failed to tender the Boat or state when the Boat would be repaired or available to Mr. Cerniglia.

49.	Neither Complete Marine nor NauticStar committed to a specific date by which the defects would be repaired and the Boat would be tendered to Mr. Cerniglia.

50.	Mr. Cerniglia was forced to hire counsel to resolve the failure to deliver the Boat.

51.	On March 13, 2023, counsel for Mr. Cerniglia, Mr. McCabe, wrote Complete Marine and NauticStar.

52.	Mr. McCabe received a response, dated March 22, 2023, from Attorney James Cornelius, Jr. attorney for NSB Boats, LLC. Mr. Cornelius represented the assets and liabilities of

NSB Boats, LLC formerly known as Nautic Star LLC, a Mississippi LLC, were transferred to NauticStar LLC, a Missouri company. A copy of that correspondence is attached as Exhibit E.

53. On August 29, 2023, additional correspondence from Mr. Cerniglia's counsel was sent to Defendants describing the claim, offering to resolve the dispute. Neither Defendant responded.

54. Mr. Cerniglia is damaged in that the Boat was not tendered, he has lost use of his money for which he has received no benefit, he has lost the benefit of his, he has paid insurance for a boat that he does not possess, he has paid financing charges for a boat he does not possess, he has lost enjoyment and pride of using a boat he owns, he has lost the economic rental value of a boat, he has incurred attorney's fees diligently attempting to obtain a remedy, and has suffered - quite reasonably - emotional distress as a result of the ordeal.

55. The Buyer's Order, executed by Complete Marine and Mr. Cerniglia on or about November 7, 2022, provided that the Contract could be canceled at Mr. Cerniglia's demand.

> Manufacturer. We are not an agent of the Manufacturer. Manufacturer can change the price, design or standard features of the Vehicle at any time without notice. If we cannot obtain the Vehicle from the Manufacturer at the price in effect as of the date of this Contract, or if we cannot obtain the agreed upon product from the Manufacturer, you or we can cancel this Contract.
>
> If you cancel this Contract under the terms of this section, we will refund to you any amounts you have paid to us. If you have delivered a Trade-in Vehicle to us, we will return it to you. If we have already sold the Trade-in Vehicle, we will pay you the trade-in allowance after adjusting for any payoff we made to a lienholder and costs for repair and reconditioning, if any.

56. Prior to filing suit, Mr. Cerniglia cancelled the contract and he renews the demand to cancel the contract by filing this Complaint.

## JURISDICTIONAL ALLEGATIONS

57. In part, this action asserts claims under federal law, the Magnuson-Moss Warranty Act, and this Court has original subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331.

58. This Court has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367. Therefore, this Court may exercise federal question jurisdiction over this matter.

59. Alternatively, the amount in controversy at issue in this dispute exceeds $75,000 and there is, upon information and belief, complete diversity between the parties.

60. Mr. Cerniglia is a resident and citizen of the state of Louisiana.

61. Complete Marine is a Florida corporation created under Florida Law with its principal place of operation at 800 S. Federal Hwy, Pompano Beach, Florida. Complete Marine is a Florida citizen.

62. NauticStar is a Missouri LLC. Upon information belief, it is owned by Iconic Marine Group, which in turn is owned by Fred Ross, a Missouri citizen.

63. Therefore, there is complete diversity between the parties, and the amount in controversy exceeds $75,000 and the court may exercise diversity jurisdiction under 28 U.S.C. § 1332.

64. Moreover, there is personal jurisdiction over each defendant.

65. Complete Marine is a Florida corporation and has its headquarters in Florida.

66. NSB Boats, LLC, formerly known as Nautic Star, LLC, a Mississippi LLC, is in privity with NauticStar, because NauticStar acquired all of the assets and liabilities of NSB Boats, LLC, formerly known as Nautic Star, LLC.

67. Further, this dispute arises out of NauticStar and its predecessor's specific contacts with the state of Florida, namely its delivery of the Boat to the state of Florida for sale to consumers

in Florida, its designation of its authorized dealer in Florida, and its and issuance of a warranty for the benefit of consumers in Florida.

68. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District and the property that is the subject of the action was located in this District.

69. All jurisdictional prerequisites have been satisfied and venue is appropriate.

**Count I – Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq. – Against NauticStar**

70. Mr. Cerniglia realleges each and every allegation set forth in this Complaint as if fully set forth herein.

71. The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq. imposes civil liability on any warrantor for failing to comply with any obligation underwritten and implied warranties. 15 U.S.C. § 2310(d)(1).

72. Here, there was a valid warranty made by NauticStar.

73. Mr. Cerniglia observed water intruding into the interior of the Boat's hull and Complete Marine stated the transducer was not functioning. These defects and other defects rendered the Boat including its hull and other components, unsafe or unfit for use under normal operating conditions.

74. The Boat was presented to NauticStar's agent, its authorized dealer, prior to the expiration of the warranty period.

75. The defects were known to NauticStar and NauticStar's agent, its authorized dealer, within the warranty period.

76. These defects are covered defects under the written warranty provided to him at the time of sale.

77. Upon information and belief, the Boat remains structurally defective.

78. Mr. Cerniglia is a consumer as that term is defined by 15 U.S.C. § 2301(3).

79. The Boat is a "consumer product" as that term is defined by 15 U.S.C. § 2301(1).

80. NauticStar is a supplier and warrantor as those terms are defined in 15 U.S.C. § 2301(4) and 15 U.S.C. § 2301(5).

81. NauticStar provided Mr. Cerniglia with "written warranties" as that term is defined by 15 U.S.C. § 2301(6).

82. NauticStar has been afforded a reasonable opportunity to cure the Boat's defects.

83. NauticStar, through its authorized dealer, has been unable or unwilling to conform the Boat to the Warranty by repairing the nonconformities within a reasonable number of attempts or a reasonable amount of time.

84. The Warranty's essential purpose has failed.

85. As a direct and proximate result of NauticStar's failure to comply with its warranties, Mr. Cerniglia has and continues to suffer damages.

86. The Act provides consumers who are harmed by a warrantor's failure to comply with any obligation under a written warranty the right to file a civil action for damages. *See* 15 U.S.C. § 2310.

87. Mr. Cerniglia advised NauticStar that it is in violation of the Magnuson-Moss Warranty Act prior to commencing this suit.

88. Upon information and belief, NauticStar does not maintain a reasonable, fair informal dispute resolution process for resolving claims for breach of the warranty, or alternatively, to the extent it does Mr. Cerniglia has substantially complied with that process by providing NauticStar with repeated notice of the defect and access to the Boat.

89. Pursuant to 15 U.S.C. § 2310(d)(2) Mr. Cerniglia seeks all costs, including attorney's fees and expert witness fees).

90. The amount in controversy for this count alone easily exceeds $50,000. Mr. Cerniglia's damages under the Magnuson-Moss Warranty Act include loss of use of the Boat, emotional distress, travel expenses, insurance premiums, financing fees, attorney's fees, and the lost benefit-of-the-bargain.

### Count II – Breach of Contract – Against Complete Marine

91. Mr. Cerniglia realleges each and every allegation set forth in this Complaint as if fully set forth herein.

92. Complete Marine is a merchant dealing in goods of the kind involved in the transaction.

93. Mr. Cerniglia and Complete Marine entered into a contract in which Mr. Cerniglia purchased the Boat from Complete Marine.

94. Although Mr. Cerniglia paid Complete Marine and otherwise complied with his contractual obligations, Complete Marine breached the agreement by failing to tender the Boat to Mr. Cerniglia.

95. Alternatively, Complete Marine breached the contract by failing to provide assurances that it would tender the Boat within a reasonable time.

96. In failing to tender the Boat, Mr. Cerniglia has incurred substantial damages, including but not limited to lost benefit-of-the-bargain, consequential damages, incidental damages, attorneys fees, and emotional distress.

### Count III – Rescission – Against Complete Marine

97. Mr. Cerniglia realleges each and every allegation set forth in this Complaint as if fully set forth herein.

98. Rescission of the sale contract is warranted for breach of contract.

99. Complete Marine breached the contract by failing to tender the Boat.

100. Alternatively, Complete Marine breached the contract by failing to provide assurances that it would tender the Boat within a reasonable time.

101. The Contract provided Complete Marine was obligated to tender the Boat to Mr. Cerniglia.

102. Florida Statute 672.711 provides, in part "[w]here the seller fails to make delivery . . .then with respect to any goods involved, and with respect to the whole if the breach goes to the whole contract [ ] the buyer may cancel…"

103. Further the Buyer's Order stated Mr. Cerniglia would be permitted to cancel the contract if Complete Marine was unable to obtain the Boat.

104. Pursuant to the contract, Mr. Cerniglia paid Complete Marine in full, satisfying his material obligations under the Contract.

105. Pursuant to the contract, Complete Marine failed in its obligations under the contract.

106. Mr. Cerniglia was not negligent and exercised due care in entering into the contract, and denial of rescission would be inequitable to Mr. Cerniglia as Mr. Cerniglia bought a new Boat of the current model year, in good condition, of the current model year which has not been provided.

107. Defendant's breach was to such an essential part of the bargain that it operates to destroy the entire agreement because the object of the contract was a sale contract for the Boat, a new NauticStar Boat of the current model year promptly tendered to Mr. Cerniglia.

108. There is no other complete and adequate remedy at law.

109. Mr. Cerniglia requests that the Court rescind the contract between Mr. Cerniglia and Defendant Complete Marine, order the return of any consideration exchanged between the parties, award damages to Mr. Cerniglia, including the sale price, benefit-of-the-bargain damages, insurance premiums, financing charge and award costs, interest, and reasonable attorneys' fees and all other relief that the Court deems just and proper.

**Count IV – Florida Deceptive and Unfair Trade Practices Act – Against Complete Marine**

110. Mr. Cerniglia realleges each and every allegation set forth in this Complaint as if fully set forth herein.

111. The FDUTPA provides that "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Section 501.204, Florida Statute.

112. Complete Marine's acts and omissions constitute unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in violation of Section 501.204 of the Florida Deceptive and Unfair Trade Practices Act.

113. Said unfair methods of competition and unlawful acts or practices include but are not limited to the following:

- a.) Complete Marine placed the Boat on the market when it knew or should have known it was unseaworthy and in so doing withheld material information;

- b.) Complete Marine offered a product for sale, the Boat, which was not available to be tendered to Mr. Cerniglia;

- c.) Complete Marine displayed the Boat at the Boat Show in a manner in which a reasonable member of the public would understand the Boat to be available for tender and in seaworthy condition;

- d.) Complete Marine represented, implicitly and explicitly, that the Boat was new and could be safely used for its ordinary purposes;

- e.) Complete Marine represented the Boat was of excellent quality and condition when it either knew that representation was false or was reckless in making the representation;

- f.) Complete Marine used a false and deceptive "MSRP" in connection with the sale of the Boat;

    g.) Mr. Cerniglia was told the Boat was available for him to receive as of November 16, 2022, which was false. Only after he traveled hundreds of miles did Complete Marine inform him that the Boat failed sea trials and was seriously defective;

    h.) Complete Marine sold Mr. Cerniglia a Boat that it knew or should have known was not seaworthy, was not fit for its intended purpose, and could not have been rendered seaworthy with reasonable efforts;

    i.) Complete Marine exhibited a pattern of inefficiency, stalling, evasion and/or incompetency with regard to its repair work on the Boat;

    j.) Mr. Cerniglia canceled and rescinded the contract, which was his right, and Complete Marine failed to honor the cancellation by refunding the purchase price.

114. More than 30 days prior to filing this lawsuit, Mr. Cerniglia provided Complete Marine with a written demand stating the name, address and telephone number of the consumer; the name and address of the dealer, a description of the facts that serve as the basis for the claim; an estimate of the amount of damages; and copies of any documents in the possession of the consumer which relate to the claim. The notice was delivered by United States Postal Service, return receipt requested, to the address where Complete Marine regularly conducts business.

115. Prior to filing suit, Mr. Cerniglia provided notice of his claims to the Florida Attorney General.

116. Prior to filing suit, Mr. Cerniglia notified Defendants of this claim, offered to resolve the matter without litigation, and left the offer open for 30 days.

117. Complete Marine did not respond to the offer.

**Count V - False, Misleading, and Deceptive Advertising in Violation of Florida Statutes Sections 817.40 - 817.47 – Against Complete Marine**

17

118. Mr. Cerniglia re-alleges and incorporates by all other paragraphs of this Complaint as though fully set forth herein.

119. Complete Marine used false or misleading information in advertising, in violation of Florida Statutes Sections 817.41 and 817.44.

120. Defendant's false advertisements as set forth herein are an unfair and deceptive trade practice and act within the meaning of Florida Statute Section 817.41.

121. False or misleading advertising used by Complete Marine in connection with the Boat include but are not limited to:

   a.) Stating the Boat's MSRP was in excess of $260,000 when in fact it was approximately $20,000 less;

   b.) Stating the Boat was of excellent quality and condition, a fact which was known by Complete Marine to be false or, in the alternative, Complete Marine would have known it to be false had it used reasonable care or investigate the quality and condition of the Boat;

   c.) Displaying the Boat in a manner in which a reasonable member of the public would have considered the Boat to be of reasonable quality and available for tender, a fact which was known by Complete Marine to be false or, in the alternative, Complete Marine would have known it to be false had it used reasonable care or investigated the quality and condition of the Boat; and

   d.) Representing that the final sale price, inclusive of tax, was $180,116.10 when Complete Marine intended to add additional unnecessary, undisclosed, and excessive fees to the final sale price.

122. Each of these representations were made by Complete Marine to sell the Boat.

## PRAYER FOR RELIEF

For these reasons, Mr. Cerniglia seeks the following relief:

a.) A declaration deeming the contract to purchase the Boat cancelled or rescinded;

b.) Contract damages including but not limited to benefit-of-the-bargain damages and the rental value of an equivalent boat to compensate Mr. Cerniglia for the loss of use of a Boat;

c.) Consequential and incidental damages including, but not limited to, financing fees for amounts charged to Mr. Cerniglia, insurance premiums paid by Mr. Cerniglia for the Boat, Mr. Cerniglia's time and expenses incurred traveling to Florida to receive a boat which was not tendered as promised;

d.) Emotional Distress;

e.) Loss of enjoyment of the Boat purchased;

f.) Prejudgment interest, post-judgment interest;

g.) Attorneys' fees and related expenses reasonably incurred in this matter;

h.) Punitive damages;

i.) Taxable costs; and

j.) All other relief available under law or equity.

## JURY DEMAND

Mr. Cerniglia demands a trial by jury for all issues so triable.

Respectfully submitted,

**CAPES, SOKOL, GOODMAN & SARACHAN, P.C.**

By: _/s/ Aaron E. Schwartz_

>Aaron E. Schwartz, #58745
>8182 Maryland Ave., Fifteenth Floor
>St. Louis, Missouri 63105
>(314) 754-4862 (telephone)
>(314) 721-0554 (facsimile)
>schwartz@capessokol.com
>
>**HALPERN, SANTOS & PINKERT, P.A.**

By:     */s/ Jay Halpern*

>Jay Halpern, Esq. #260576
>150 Alhambra Circle, Suite 1100
>Coral Gables, FL 33134
>(305) 445-1111 (telephone)
>(305) 445-1169 (facsimile)
>jay@hsptrial.com
>
>***Attorneys for John M. Cerniglia, Plaintiff***

## CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of October 2023, I electronically filed the foregoing with the clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Aaron E. Schwartz*